STEVENSON, Judge,
dissenting.
I join in the dissenting opinions written by Judge Farmer and Judge Klein.
I write only to register my observation that the termination of parental rights is an extremely serious matter and concerns not only the rights of the parents but also the fundamental constitutional rights of the child to receive the love, companionship and society of its natural parents. For the most part, unless the natural parents are abusive or otherwise unfit, children learn to love them for who they are and to respect them for their worth as individuals. Unfortunate *957 ly, often what the natural parent has to offer pales in comparison with what someone else might offer, but still the natural child finds whatever pearls may lie within the oyster shell of the natural parents. The severing of the parent-child relationship based on anything short of neglect and abuse, at a time when the child is unable to meaningfully participate in the decision or even render its opinion about the matter, must be approached with utmost caution.
Truly, we must admit that here, we do not know what outcome Baby Emily would most want in this predicament. Would it be sufficient to her, ten or fifteen years from now, to know that a relationship with her natural father was denied to her because of evidence of abandonment that was at best contradictory and ambiguous? Would it comfort her to know that the trial judge on one day said in no uncertain terms that clearly her father did not abandon her and on the next occasion, considering virtually identical testimony, concluded that the evidence was clear and convincing that he had abandoned her? Would it be sufficient to explain to her that no court decided that her father was unfit, unable, or unwilling to care for her, but that it was found that her father “abandoned” her based on events occurring during a brief three or four month period, albeit an important one, when the father did little to comfort the mother emotionally (although both mother and father had reached a stage in their relationship where neither could tolerate the presence of the other) and hardly anything at all financially (although the mother voluntarily left the home she shared with the father, the father knew that the mother was in no acute physical distress, and knew that the mother was receiving the same level of prenatal care that she would have received had she continued residing with him)?
Within the context of human experience in the real world, the evidence in this case that the father has “abandoned” his child is far from clear and convincing. As Justice McDonald remarked in his dissenting opinion in Matter of Adoption of Doe, 543 So.2d 741, 751 (Fla.1989):
[Hjistory has demonstrated that, unless unfit, the best interest of the child lies with the natural parents. It is but a matter of time before this child will learn of his adoption and wonder why. All that can be said to him is that, even though your [father] wanted you, the adoptive parents and the courts would not let [him] have you because ... he did not treat your mother as well as he might have when she was pregnant with you. Even to a child these explanations are inadequate.
I would reverse the order of the well meaning but wavering trial judge.
GUNTHER and FARMER, JJ., concur.